SAMUEL JOSEPH GREENE, Plaintiff–Appellee, v. MARGUERITE MARIAN GREENE, Defendant–Appellant

NO. 14637

(FC–D NO. 118905)

JULY 24, 1991

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE YIM, ASSIGNED BY REASON OF VACANCY

## OPINION OF THE COURT BY BURNS, C.J.

Defendant Marguerite Greene (Marguerite) appeals the family court's June 14, 1990 Order Denying Defendant's Motion for Relief After Order or Decree (June 14, 1990 Order). Marguerite's October 25, 1989 Defendant's Motion for Relief from Order or Decree (October 25, 1989 Motion), which was based upon a September 8, 1982 change in the relevant federal law made retroactive to June 26, 1981, sought a reconsideration of the July 16, 1981 Decree Granting Absolute Divorce and Awarding Child Custody's (July 16, 1981 Divorce Decree) award of all of plaintiff Samuel Greene's (Samuel) military retirement benefits to Samuel. The family court applied Hawaii Family Court Rules (HFCR) Rule 60(b)(6) and denied the October 25, 1989 Motion because of Marguerite's delay in filing the October 25, 1989 Motion after Samuel's July 31, 1988 retirement from the Air Force. We affirm.

## FACTS

| | |
|---|---|
| October 20, 1935 | Samuel was born. |
| July 18, 1938 | Marguerite was born. |
| 1958 | Samuel entered the United States Air Force as a Second Lieutenant. |
| April 18, 1959 | Marguerite and Samuel were married. |
| July 13, 1960 | First Daughter was born. |
| July 2, 1961 | Second Daughter was born. |
| June 26, 1964 | Third Daughter was born. |
| October 22, 1968 | Son was born. |
| October 6, 1973 | Fourth Daughter was born. |
| August 1978 | Samuel was assigned to Hickam Air Force Base. Marguerite and the children came with him. |
| September 1978 | Marguerite decided to live apart from Samuel and the children and moved to Burke, Virginia. |
| December 3, 1980 | Samuel filed a Complaint for Divorce in the First Circuit Court. |
| June 26, 1981 | The United States Supreme Court entered its opinion in *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). *McCarty* barred the inclusion of one party's military retirement benefits in the marital estate divisible in divorce cases. |

| | |
|---|---|
| July 9, 1981 | A hearing was held on the uncontested divorce calendar. Samuel, Samuel's attorney, and Marguerite's attorney were present. |
| July 15, 1981 | Samuel's attorney filed an Agreement in Contemplation of Divorce (AICD) signed by both parties. The AICD awarded the custody of the three minor children to Samuel, reserved Marguerite's obligation to pay child support, did not award any alimony, awarded the Virginia residence and the two Florida parcels to the parties as tenants in common subject to a buyout or sale upon the written request of either party, and awarded each party his or her respective retirement benefits accrued in connection with his or her employment. |
| July 16, 1981 | The family court entered its Decree Granting Absolute Divorce and Awarding Child Custody. It incorporated the AICD. It was "Approved As To Form" by Marguerite's attorney. Thereafter, Samuel paid all of the children's expenses. Samuel was a Colonel in the United States Air Force. |

| | |
|---|---|
| 1982 | Samuel remarried. |
| February 1, 1983 | The Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C.S. § 1408 (Law. Co–op. 1986 & Supp. 1991) took effect. It retroactively reversed the effect of *McCarty*. |
| February 1983 | Samuel was promoted to Brigadier General and was transferred to MacDill Air Force Base in Florida. |
| Spring 1983 | Samuel first learned of the USFSPA's enactment. |
| October 1984 | Samuel's present wife gave birth to their son who suffers from a medical defect. |
| June 1985 | Samuel was transferred to Ramstein Air Base, West Germany. |
| Fall 1986 | After repeatedly contacting Samuel to effect the sale of the Florida real estate, Marguerite contacted an attorney. She was advised that the combination of the Soldiers' and Sailors' Civil Relief Act and Samuel's assignment in West Germany made it difficult, if not impossible, to force the sale of the real property and that she should wait until Samuel returned to the United States. |

| | |
|---|---|
| Summer 1987 | Marguerite first learned of USFSPA's enactment. She contacted EXPOSE, an organization which helps ex–spouses of military personnel, and was told that it was too late for her to change the July 16, 1981 Divorce Decree with respect to Samuel's military retirement benefits. Marguerite did not contact the Honolulu attorney who represented her in her 1980–81 divorce case. |
| Spring 1988 | Their children informed Marguerite of Samuel's pending retirement. |
| July 31, 1988 | Samuel retired from the Air Force because he was not promoted to Major General and Brigadier Generals are not permitted to remain on active duty after 30 years of service. |
| Fall 1988 | Marguerite again contacted EXPOSE and was provided with a list of Honolulu attorneys who might help her. She intentionally waited until her planned vacation trip to Hawaii with three of her children to contact a Honolulu attorney. She did not attempt to contact the Honolulu attorney who represented her in her 1980–81 divorce case. |

| | |
|---|---|
| February 1989 | Samuel accepted civilian employment in Van Nuys, California. His wife and child remained in Virginia. |
| May 1989 | Marguerite met with an attorney in Honolulu. |
| July 1989 | Marguerite's attorney advised her of the results of his research and communicated his recommendations to her. |
| August 1989 | Samuel terminated his civilian employment in California and returned to Virginia. |
| September 26, 1989 | In Virginia, Marguerite signed her affidavit attached to her October 25, 1989 Motion. |
| October 25, 1989 | Marguerite filed her October 25, 1989 Motion. |
| November 1989 | Marguerite left her employment at Giant Foods and prepared for employment in real estate. |
| December 1989 | Marguerite's military ID card expired in 1981. She did not learn until the end of 1988 that she was entitled to a military ID card and she did not obtain a new card until December 1989. |
| January 1990 | Samuel accepted employment with Computer Data Systems, Inc. His wife is employed with the U.S. Customs Service. |

| | |
|---|---|
| May 1, 1990 | The family court conducted an evidentiary hearing on Marguerite's October 25, 1989 Motion. |
| June 1, 1990 | The family court rendered its oral decision. |
| June 14, 1990 | The family court entered its June 14, 1990 Order. |
| July 13, 1990 | Marguerite filed a notice of appeal of the June 14, 1990 Order. |
| October 30, 1990 | The family court entered its Findings of Fact and Conclusions of Law. It concluded that Marguerite's delay after Samuel retired from active duty in July, 1988 was insufficiently justified. |

## DISCUSSION
### I.

We conclude that HFCR Rule 60(b)(5) is not relevant. It applies when "it is no longer equitable that the decree should have prospective application." In other words, it applies when it is no longer equitable that the decree should have continued enforcement. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2863 (1973). Marguerite's motion sought to do much more than terminate the continued enforcement of the award to Samuel of all of his military retirement benefits. Its objective was the entry of an order awarding her an equitable share of Samuel's military retirement benefits. HFCR Rule 60(b)(5) cannot accomplish that latter purpose.

## II.

We conclude that HFCR Rule 60(b)(6) is relevant.

### A.

In *Hammon v. Monsef*, 8 Haw. App. 58, 792 P.2d 311 (1990), we held that HFCR Rule 60(b)(6) does not authorize the family court to reconsider its final division of the parties' property in a divorce case when the request for reconsideration is based upon a non–retroactive "mere" change in the relevant case law. The question in the instant case is whether HFCR Rule 60(b)(6) authorizes the family court to reconsider its final division of the parties' property in a divorce case when the request for reconsideration is based upon a retroactive change in a relevant federal law. Our answer is yes. A retroactive change of a relevant law is significantly more than a "mere" non–retroactive change.

### B.

The next question is whether Hawaii Revised Statutes (HRS) § 580–56(d) (1985) divests the family court of jurisdiction to decide such HFCR Rule 60(b)(6) motions. Our answer is no.

In *Boulton v. Boulton*, 69 Haw. 1, 730 P.2d 338 (1986), the family court entered a divorce decree, but retained jurisdiction to resolve the unresolved division of property issue. The Hawaii Supreme Court held that HRS § 580–56(d) divests the family court of jurisdiction to divide the property one year after the entry of a decree of divorce which reserves jurisdiction to divide the property.

In *Kremkow v. Kremkow*, 7 Haw. App. 286, 758 P.2d 197 (1988), we noted that HRS § 580–56(d) also divests the family court of jurisdiction to divide the property following the entry of a

decree of divorce which does not reserve jurisdiction to divide the property, and following the entry of a decree or order finally dividing the property of the parties following the entry of a divorce decree which reserved jurisdiction to divide the property. We then concluded that HRS § 580–56(d) divests the family court of its HFCR Rule 60(b)(1) jurisdiction to divide the property in divorce cases in each of the above three situations.

In *Kano v. Kano*, 8 Haw. App. 172, 799 P.2d 55 (1990), however, we concluded that HRS § 580–56(d) does not divest the family court of its jurisdiction pursuant to HFCR Rule 60(b)(3) to change the division of property in divorce cases. In other words, HFCR Rule 60(b)(3), which provides a remedy in cases of fraud, is an exception to *Boulton* and the general impact of HRS § 580–56(d).

Do *Boulton* and HRS § 580–56(d) divest the family court of jurisdiction under HFCR Rule 60(b)(6) to change the division of property issue in a divorce case when the request for the change is based upon a retroactive change in a relevant federal law? Our answer is no. When balancing the competing interests of the finality of judgments and decrees against a party's right to the benefit of a retroactive change in a relevant federal law, we conclude that HRS § 580–56(d) opts against finality.

## C.

HFCR Rule 60 requires all motions made under it, except motions made under HFCR Rule 60(b)(4), to be made within a reasonable time. It also requires all motions made under HFCR Rule 60(b)(1), (2), and (3) to be made not more than one year after the decree. In the usual case,

> [w]hat constitutes a "reasonable time" is determined in the light of all attendant circumstances, intervening rights, loss of evidence, prejudice to the adverse party, the

commanding equities of the case, and the general policy that judgments be final. 7 *Moore's Federal Practice* ¶ 60.27[3] (2d ed. 1982); 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2866 (1973).

Since Rule 60(b)(6) relief is contrary to the general rule favoring finality of actions, the court must carefully weigh all of the conflicting considerations inherent in such applications. *Kealoha v. Tanaka*, [42 Haw. 630 (1958) (*overruled in part on other grounds*, *Life of the Land v. Ariyoshi*, 57 Haw. 249, 553 P.2d 464 (1976))]; *Isemoto Contracting v. Andrade*, [1 Haw. App. 202, 616 P.2d 1022 (1980)]. Once the court has made a determination to grant or deny relief, the exercise of its discretion will not be set aside unless the appellate court is persuaded that, under the circumstances of the case, the court abused its discretion. *Paxton v. State*, 2 Haw. App. 46, 625 P.2d 1052 (1981).

*Hayashi v. Hayashi*, 4 Haw. App. 286, 290–91, 666 P.2d 171, 175 (1983).

In divorce cases where the HFCR Rule 60(b)(6) motion relates to the division of property, the additional impact of HRS § 580–56(d)'s express legislative policy in favor of the finality of judgments and decrees must be considered. The maximum period of time HRS § 580–56(d) allows the family court to retain jurisdiction to divide the property is one year after the divorce decree is entered. It follows that, absent extraordinarily compelling circumstances, a party should not be allowed more than one year after the time she knows or should know of her right to seek a change of the division of property in which to initiate her request for a change.

Marguerite first learned in the summer of 1987 about the September 8, 1982 retroactive change in the relevant federal law. She did not move for reconsideration of the July 16, 1981 Divorce Decree until October 25, 1989. The family court concluded that

Marguerite's explanation for her more than fourteen month delay in filing her motion after Samuel retired from the Air Force was insufficient to justify her delay. In our view, Marguerite's explanation for her more than two year delay in filing her motion after she first learned in the summer of 1987 about the retroactive change in the relevant federal law was insufficient to justify her delay. Therefore, we conclude that the family court did not abuse its discretion.

## CONCLUSION

Accordingly, we affirm the family court's June 14, 1990 Order Denying Defendant's Motion for Relief After Order or Decree.

*Robert M. Harris* on the briefs for defendant–appellant.
*Thomas L. Stirling, Jr.* and *Robert S. Thurlow* (Stirling & Kleintop) on the brief for plaintiff–appellee.